IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHAMUS WRIGHT, SR.,
and KENTOINE PENMAN,

        Plaintiffs,

No. 2:18-cv-01126-WJ-KRS

v.

KEVIN MARTINEZ; RUBEN GASTELUM;
and JUAN JAIMES, all officers of the Hobbs
Police Department,

        Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL AND EXTENDING DISCOVERY

**THIS MATTER** comes before the Court on Defendants' motion to compel discovery. (Doc. 37). The dispute centers around whether Plaintiff Shamus Wright must answer questions relating to, and provide releases for, his medical history. Defendants maintain they need the information to defend against Wright's claims and, possibly, prove up an affirmative mitigation defense. Wright insists he has only alleged "garden variety" injuries and maintains Defendants should not be allowed unfettered access to his privileged medical history. The Court has considered the parties' submissions along with the record and **GRANTS in part** and **DENIES in part** Defendants' motion.

## BACKGROUND

This case arises from Wright's arrest by Hobbs, New Mexico police officers on June 28, 2018 for allegedly concealing his identity. (Doc. 1). According to the complaint, the Wright family was in the process of planning a reunion for the following day. (*Id.*). Two family members, Plaintiff Kentoine Penman and De'Aunte Meridyth, were outside standing in the street

of a residential neighborhood by a parked car. (*Id.*). The Wright family had procured a permit to block the road for the reunion. (*Id.*).

Officer Jaimes was in the vicinity conducting an unrelated traffic stop and observed Penman and Meridyth in the road. (*Id.*). At some point, Jaimes approached Penman and Meridyth and detained them for walking in the street instead of on the sidewalk, although Jaimes did not actually observe either man walking in the street. (*Id.*). Officers Gastelum and Martinez arrived on scene. (*Id.*).

As the events were unfolding, Wright was standing on the sidewalk. Wright asked the officers why they were there. (*Id.*). The officers accused Wright of "interjecting himself" into the investigation and demanded his identification. (*Id.*). Wright refused, and Martinez told Wright that concealing one's identity is a crime. (*Id.*). Gastelum and Martinez then told Wright they were arresting him for concealing his identity. (*Id.*).

In the process of arresting Wright, Gastelum used a leg sweep causing Wright to fall to the ground. (*Id.*). As Wright lay on the ground, Gastelum had control of Wright's left arm and Martinez, Wright's right hand. (*Id.*). Martinez kept Wright pinned to ground while Gastelum handcuffed Wright. (*Id.*). Wright was then transported to the Hobbs' jail and charged with concealing identity, and resisting, evading, and obstructing an officer. (*Id.*). Wright "experienced residual pain after the incident." (*Id.*, ¶48). This lawsuit followed on December 3, 2018. (Doc. 1). For Wright, the complaint alleges a count of wrongful arrest under the Fourth Amendment. (*Id.*).

As part of discovery, Wright verified that he experienced "[p]ain and [s]uffering . . . on [his] body from the arrest" along with "[a]nxiety defending himself from criminal charges." (Doc. 32-7). Wright also confirmed he would seek compensation for, *inter alia*, this pain and

suffering and anxiety although he had not assigned a dollar amount to these damages. (*Id.*). Wright further averred he "did not request medical attention" as a result of the arrest, but did not, as Defendants requested, "identify the nature of the [residual] physical pain in detail, including but not limited to the location of the pain, the severity of the pain, the duration of the pain[]." (*Id.*, Pl.'s Ans. Interrog. 12).

Although Wright seeks "damages for bodily [and] psychological injur[ies]," he declined to provide Defendants the "name and address of any healthcare providers . . . who provided treatment to [him] for any physical injury, condition, or mental health condition prior to the June 28, 2018 Incident" and a release for his medical records. (*Id.*, Ans. Interrog. 13). Wright objected because "the requested information is overly broad an unduly intrusive of Plaintiff's privacy interest." Moreover, a "complete medical release . . . . of his complete medical history," Wright maintains, would be overly broad, intrusive of his privacy interests and unlikely to reveal any relevant evidence. (*Id.*).

For similar reasons, Wright withheld "records relating to any treatment for any physical, psychological or mental injury [he] claim[s] was caused by or exacerbated by the June 28, 2018 Incident" or a "HIPAA Compliant Authorization" to release records "for each such provider who has treated [Wright] within the five (5)-year period prior to the June 28 Incident." (Doc. 37-3, Resp. Request for Production 8). Wright also did not produce his "medical records from any healthcare providers . . . who treated [him] for any preexisting mental, psychological or physical condition [he] claim[s] was exacerbated by the . . . Incident" or sign releases Defendants provided. (*Id.*, Resp. Request for Production 9). In Wright's view because he sought no "medical or mental health treatment as a result of [his] arrest[]" his "previous treatment is

immaterial to their claims and unduly invasive of privacy interests and not proportional to the needs of discovery." (*Id.*).

The instant motion to compel answers to Interrogatories 12 and 13 and Requests for Production 8 and 9 followed. (Doc. 37).

**STANDARD**

Federal Rule of Civil Procedure 26 allows for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "When requested discovery appears relevant, the party objecting to production has the burden of establishing the lack of relevance by demonstrating that the request falls outside the scope set forth in Rule 26(b)(1), or that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Shotts v. Geico Gen. Ins. Co.,* 2017 U.S. Dist. LEXIS 171515, at *1 (W.D. Okla. Oct. 17, 2017) (citation omitted). Likewise, where a party resists discovery on privilege grounds, that party carries "the burden of establishing that the privilege applies." *Zander v. Craig Hosp.*, 743 F. Supp. 2d 1225, 1231-32 (D. Colo. 2010).

**DISCUSSION**

Wright seeks damages for pain, suffering, and anxiety as reflected in his complaint and answers to interrogatories. He insists, however, that he need not, as requested in Interrogatories 12 and 13 and Requests for Production 8 and 9, give details as to his pain and suffering; identify healthcare providers that treated him prior to the arrest; or otherwise execute releases for medical records. In sum, Wright argues that Defendants' discovery requests are disproportionate to the claims and defense of this case; his injuries are "garden variety" and, as a result, Wright did not put his private medical information at issue. The Court disagrees.

The Tenth Circuit has not adopted a "garden variety" injuries exception to discovery where a plaintiff has placed his otherwise privileged healthcare information at issue. *See Empey v. Fedex Ground Package Sys.*, 2016 U.S. Dist. LEXIS 194561, at \*8-9 (D.N.M. July 7, 2016). And although some federal district courts have recognized the "garden variety" approach, the concept appears to relate exclusively to mental-health records or information. *See id.* Thus, Wright's *physical* injuries would fall outside the scope of a "garden variety" exception. In any event, the Court declines to expand the concept on the limited briefing before it and without the benefit of controlling circuit case law.

For mental-health information, the garden-variety concept represents a compromise between, obviously enough, the "narrow approach" and the "broad approach." *Castillo v. Vista Mesa Villa*, 2016 U.S. Dist. LEXIS 195845, at \*22 (D.N.M. Jan. 22, 2016) (citing *Awalt v. Marketti*, 287 F.R.D. 409, 417 (N.D. Ill. 2012)). "Courts employing the 'narrow' approach will only find a waiver of the [psychotherapist] privilege where the emotional distress claims are 'severe,' where the plaintiff relies on communications with a therapist, . . . or where the plaintiff intends to offer expert testimony on the claim of emotional distress." *Id.* Under the "broad approach," courts find a waiver when a plaintiff places [his] mental condition at issue . . . by making a claim for emotional distress damages." *Id.*

Although meant to be a workable solution, the garden-variety approach to emotional injury is doctrinally complex. As one court defined the term, "garden variety" consists of:

> the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized; the generalized insult, hurt feelings and lingering resentment which anyone could be expected to feel given the defendant's conduct; the normal distress experienced as a result of the claimed injury; the negative emotions that plaintiff experienced essentially as the intrinsic result of the defendant's alleged conduct, but not the resulting symptoms or conditions that she might have suffered; the generalized insult, hurt feelings, and lingering resentment that does not involve a significant disruption of the plaintiff's work life and rarely involves more than a

> temporary disruption of the claimant's personal life; the ordinary or commonplace, simple or usual; those that do not involve psychological treatment or adversely affect any particular life activities; those where the plaintiff describes his or her distress in vague or conclusory terms, but does not describe their severity or consequences; or those that involve the general pain and suffering and emotional distress one feels at the time of the complained-of conduct, but not any ongoing emotional distress

*Id.* (citing *Flowers v. Owens*, 274 F.R.D. 218, 225-26 (N.D. Ill. 2011)). The Court is, therefore, not convinced the Tenth Circuit would adopt his middle-ground approach. *See Empey*, 2016 U.S. Dist. LEXIS 194561, at *10 (explaining "[f]or one thing, 'garden variety' emotional distress has proven difficult to define" and noting the "problem with these cases is definitional and stems from the imprecision and elasticity of the phrase 'garden variety'") (citations omitted)).

Even assuming the "garden variety" concept applies, Wright has not established that his emotional damages meet the definition, except to say that he did not seek medical attention as a result of his arrest and opine that his damages are "garden variety." To the Court's knowledge, Wright has not been deposed, and from Wright's answers to interrogatories, the Court is unable able to discern the extent and duration of Wright's anxiety and the extent to which it interfered with Wright's work and personal life, among the other definitional elements. In fact, the term "garden variety" does not appear in Wright's answers at all. The party resisting discovery bears the burden to justify the party's position, and Wright has not done so here.

Although Wright has not established that his "garden variety" injuries preclude discovery of his medical history, the Court is concerned with the scope of Defendants' requests. *See* Fed. R. Civ. P. 26(b)(1) (explaining, in terms of scope, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). For example, Interrogatory 13 asks Wright to identify basically all healthcare providers that have ever treated him and to give a release for records from these providers. The

Court, therefore, exercises its discretion to impose some basic limitations. First, Wright should identify all providers that treated him for anxiety or with whom he discussed anxiety in the past five years. Second, if any such providers exist, Wright shall himself obtain the medical records and provide Defendants a copy of any release made to or communication with the medical provider documenting his efforts to gather these records. Finally, after obtaining and reviewing the records, Wright shall, subject to a confidentiality order, disclose those records relating to anxiety and submit a privilege log for all other documents he withholds.

The Court will follow a similar procedure for Wright's physical injuries. Wright asks for damages for pain and suffering, and Defendants must have some ability to discover information about what may have contributed—or not—to his condition regardless of whether he sought treatment. Wright's *entire* medical history is not, in the Court's view, proportional to this endeavor. The Court will, therefore, first require Wright to fully answer Interrogatory 12, which asks for specifics on the physical pain, "including but not limited to the location of the pain, the severity of the pain, the duration of the pain[.]" (Doc. 37). Wright concedes he must supplement his answer, but the record does not demonstrate he has done so. Once Wright fully answers this interrogatory, he will identify all providers that have treated him for physical injuries in the past five years for the general locations he describes. If Wright has received treatment, he shall gather those medical records and provide Defendants a copy of any release made to or communication with the medical provider documenting his efforts to obtain these records.

Finally, after obtaining and reviewing the records, Wright shall, subject to a confidentiality order, disclose those records that relate to the treatment of the general locations he described. For records he does not turn over, Wright will provide a privilege log. If the records demonstrate that a broader timeframe may yield discoverable information, Defendants

may apply for additional relief with the Court. Alternatively, in the event Wright does not wish to engage in the process of identifying, gathering, and disclosing his records, he may disclaim any damages from emotional distress or arising from physical injury.

## CONCLUSION

For the reasons stated above, Wright has not established that his "garden variety" injuries preclude discovery of his medical history. At the same time, the scope of Defendants' requests seeking essentially all medical of Wright's medical records are disproportionate to the claims and defenses raised in this case.

**IT IS, THEREFORE, ORDERED** that Defendants' motion to compel (Doc. 37) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that, on or before **October 15, 2019**, Wright supplement his discovery responses to fully answer Interrogatory 12 and identify the healthcare providers that have treated him in the last five years in the general areas identified in the answer to Interrogatory 12 as well as those providers that have treated him in the past five years for anxiety or with whom Wright has discussed anxiety.

**IT IS FURTHER ORDERED** that on or before **October 15, 2019**, Wright's counsel send correspondence to all identified providers seeking his medical records for the past five years and provide copies of the correspondence to the attorneys for Defendants.

**IT IS FURTHER ORDERED** that within seven (7) days after receiving his medical records, Wright submit all documents related to locations he described in Interrogatory 12 as well as those related to anxiety. For all documents withheld, Wright must provide privilege log within in this timeframe.

**IT IS FURTHER ORDERED** that the discovery cutoff date is extended until **November 22, 2019** for the sole purpose of allowing Wright to gather and exchange information as set forth above and to permit a full deposition of Wright.

**IT IS FURTHER ORDERED** that Defendant's motion for a hearing (Doc. 57) is **DENIED** as moot. The Court will, however, entertain a motion to further extend the discovery deadline to allow Defendants to depose Plaintiff after receiving his healthcare information and records as provided for in this Order. The parties shall meet and confer on extending discovery and, if agreed, present the Court with a joint motion and proposed form of order.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE