# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SHAMUS WRIGHT, SR., and
KENTOINE PENMAN,

      Plaintiffs,

      vs.                                               CIV-18-01126 WJ/KRS

OFFICER KEVIN MARTINEZ,
a Hobbs Police Department officer;
OFFICER RUBEN GASTELUM,
a Hobbs Police Department officer; and
OFFICER JUAN JAIMES,
a Hobbs Police Department Officer,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF WRIGHT, SR.'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Plaintiff Shamus Wright, Sr.'s Motion for Summary Judgment, filed July 31, 2019 (**Doc. 49**). Plaintiff claims that he was deprived of his Fourth Amendment rights to be free of unreasonable seizures following his arrests by Hobbs Police Department officers. Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiff's motion is not well-taken and, therefore, is denied.

## BACKGROUND

Plaintiff Wright contends that the Defendant officers were acting outside of their lawful authority when he was arrested for refusing to provide identification and because he was verbally objecting to police activity. Mr. Wright's co-plaintiff, Kentoine Penman, has filed a separate motion for summary judgment against the same defendants (Doc. 32) claiming that they violated his constitutional rights by unlawfully detaining him. The Court will address Mr. Penman's motion separately although the factual narrative intertwines both plaintiffs.

## I. Parties' Positions[1]

### A. Plaintiff:

According to the Complaint and the Joint Status Report (Doc. 22), both Plaintiffs were standing in a roadway on the evening of June 28, 2018 preparing for the Wright family reunion at that location. Hobbs Police Department ("HPD") Officer Juan Jaimes was conducting a nearby traffic stop and noticed Mr. Penman and De' Aunte Meridyth standing in the roadway near a parked car on a residential street. Officer Jaimes decided to detain the two under the state statute that makes it unlawful for a pedestrian "to walk along or upon an adjacent roadway" where sidewalks are provided. NMSA 1978, §66-7-339 ("Pedestrian on Roadway" statute). Officer Jaimes approached Mr. Penman and Mr. Meridyth in his patrol car with his emergency lights engaged. They began to walk away, Officer Jaimes called them back and Mr. Penman complied. Officer Jaimes asked Mr. Penman to produce identification, which he did.

While Officer Jaimes was conducting a records check on Mr. Penman, Officers Gastelum and Martinez arrived on the scene and tried to get identification from Mr. Meridyth. Mr. Meridyth walked behind Plaintiff Wright who was standing on a sidewalk. Mr. Wright repeatedly asked the officers why they were there. The officers told Mr. Wright that he was "interjecting himself" into their investigation and asked him to produce identification. Mr. Wright refused and explained that he had done nothing wrong. Officers Martinez and Gastelum informed Mr. Wright that he was being placed under arrest for Concealing Identity. Officer Gastelum conducted a leg sweep of Mr. Wright, causing him to go to the ground. Officer Martinez used his body weight to keep Mr. Wright pinned to the ground and Officer Gastelum handcuffed him. Mr. Wright was taken to the

---

[1] Because the complaint contains a minimum of facts, the Court turned to the parties' respective contentions in the Joint Status Report (Doc. 22) to flesh out the narrative.

patrol unit, transported to Hobbs City Jail and charged with Concealing Identity and Resisting, Evading and Obstructing an officer.[2]

B. Defendants:

Defendants claim that while Officer Jaimes was conducting a records check of Mr. Penman, Mr. Wright approached Officer Martinez and became increasingly vocal about the officers' presence. He had his hands in his pockets at the time and when Officer asked him to remove his hands from his pockets and leave the scene, Mr. Wright refused and began inciting the crowd against the officers. When Mr. Wright refused to provide identifying information and then resisted arrest, Officer Gastelum performed the leg sweep. Mr. Wright continued to struggle and Officer Jaimes came over to assist the other two officers in arresting Mr. Wright after obtaining Mr. Penman's information. Officer Jaimes pulled out his Taser and told Mr. Wright to place his hand behind his back. As the officers were attempting to arrest him, the crowd on the sidewalk began to move closer to the officers while at the same time several vehicles arrives and the crowd grew to about forty people. Doc. 22 at 7-8.

Defendants claim that Mr. Wright continued to yell and escalate the situation and the crowd was yelling at Officers Gastelum and Martinez as they attempted to place handcuffs on Wright. Mr. Penman also approached the officers, standing inches away from Officer Martinez' face and trying to record the incident. When Officer Jaimes instructed him to back away repeatedly, Mr. Penman refused. Officer Martinez then informed Mr. Penman that he was under arrest for repeatedly refusing to step back. Mr. Penman shoved Officer Martinez and ran off. Officer Martinez pursued Mr. Penman, lunged toward him, picked him up from the ground and forced him

---

[2] The Complaint alleges that Mr. Penman was detained and that a "records check" was done, but other than these bare allegations, there is no further information. However, Defendants' contentions in the Joint Status Report (Doc. 22) fleshes out Mr. Penman's detention and arrest in more detail. The Court offers them here as an overview of the parties' positions.

onto the ground. Officer Jaimes approached Officer Martinez and told Mr. Penman to place his hands behind his back, but Penman refused. By this time, the crowd had closed in again and was about three feet away from the officers. Officer Jaimes placed his knee on Penman's upper back and pointed the Taser at the crowd of people. The crowd retreated. Officer Jaimes told Mr. Penman to place his hands behind his back or he would be tased, and Penman complied. Mr. Penman was arrested and escorted to Hobbs City Jail.

After arresting Mr. Penman, Officer Jaimes found a small plastic bag that contained a white powdery substance near the ground where Mr. Penman was detained. Officer Jaimes also searched the back seat area of his patrol unit where Mr. Penman had been sitting. He found two small plastic bags, one containing a green leafy substance and the other a white crystalline substance. Mr. Penman told Officer Jaimes he had just finished smoking weed, that the bag containing the green leafy substance was his and that the bag with the white powdery substance was cocaine and also belonged to him. However, Mr. Penman told Officer Jaimes that the small bag containing a white crystalline substance was not his. Tests conducted with a narcotics reagent kit at the HPD revealed that the white powdery substance was cocaine, the white crystalline substance was methamphetamine and that the green leafy substance was marijuana.

On June 28, 2018, Mr. Penman was arrested for following crimes: 1) Pedestrians in the Roadway, Resisting; 2) Obstructing, or Evading an Officer; 3) Possession of Cocaine, Methamphetamine, and Marijuana; and 4) Assault and Battery on a Peace Officer. Mr. Wright was arrested for the following crimes: 1) Concealing Identity; and 2) Resisting, Evading, or Obstructing an Officer.

Count I of the Complaint alleges Wrongful Arrest and detention of Mr. Wright, and Count II alleges Unlawful Detention and seizure of Mr. Penman, both in violation of their Fourth Amendment rights.

## II.     Legal Standard

Although Mr. Penman's motion will not be addressed here, both Plaintiffs have filed summary judgment motions, with the individual officers relying on a defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012).[3] "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 134 S.Ct. 1861, 1865(2014). The first prong asks whether the facts, taken in the light most favorable to the party asserting the injury—here the Defendant officers—show that the officer's conduct violated a federal right. The second asks whether the right in question was "clearly established" at the time of the violation. *Id*. at 1865–66 (citations and quotation marks omitted). The Court may consider these two inquiries in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Once a defendant asserts a defense of qualified immunity, the burden shifts to the plaintiff to show that the defendant violated a constitutional or statutory right, and that the right was clearly established at the time of the conduct. *See McBeth v. Himes,* 598 F.3d 708, 716 (10th Cir. 2010). The contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

---

[3] Defendants' response to Mr. Penman's motion for summary judgment does not expressly rely on a qualified immunity defense, although certain language in the brief indicates that they argue the law is not clearly established. *See* Doc. 40 at 24.

**III.     Relevant Law Under Fourth Amendment**

An officer detaining a suspect for the purpose of requiring him to identify himself, has conducted a seizure subject to the requirements of the Fourth Amendment. *Brown v. Texas*, 443 U.S. 47, 50–52 (1979) ("since officers lacked any reasonable suspicion to believe that defendant was engaged or had engaged in criminal conduct, application of the Texas statute to detain defendant and require him to identify himself violated the Fourth Amendment"); *State v. Ortiz*, 2017-NMCA-006, ¶ 12, 387 P.3d 323, 327; *see also State v. Dawson*, 1999–NMCA–072, ¶ 21, 127 N.M. 472, 983 P.2d 421 (concluding that unless there is reasonable suspicion to believe the defendant was involved in criminal activity, it violates the Fourth Amendment to require the defendant to produce identification). For reasonable suspicion to exist, an officer "need not rule out the possibility of innocent conduct;" he or she simply must possess "some minimal level of objective justification" for making the stop. *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009). Evidence falling "considerably short" of a preponderance satisfies this standard. *U.S. v. Arvizu,* 534 U.S. 266, 274 (2002).

In evaluating whether an officer had reasonable suspicion, a court is guided by the "totality of the circumstances" in the case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. *U.S. v. Arvizu,* 534 U.S. 266, 273 (2002); *U.S. v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997) (the existence of objectively reasonable suspicion of illegal activity does not depend upon any one factor, but on the totality of the circumstances). Under this standard, officers are allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. *Id.*

**DISCUSSION**

Courts may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236 (2009); *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015). In this case, the Court finds that there are material disputes as to whether Mr. Wright has shown that Defendants violated his constitutional rights. Summary judgment will be denied on that basis, and so it is unnecessary to decide here whether the relevant law was clearly established at the time.

**I.    Plaintiff Wright**[4]

Mr. Wright (or "Plaintiff" for this section of the discussion) asserts that he was a bystander to a pedestrian stop involving Mr. Penman and that he was arrested for refusing to provide Officer Martinez with his identification. His entitlement to summary judgment turns on whether Defendants offer any evidence that they had a legal basis to detain him.

    A.    <u>Officer Safety and Obstruction</u>

Mr. Wright states that he objected the Officer Jaimes' detention of Mr. Penman, and that he repeatedly asked the officers why they were there. Compl., ¶¶30-31; Statements of Fact ("Facts") 27, 48. Plaintiff Wright claims that his questions about the officers' presence prompted Defendants to accuse him of interjecting himself into their investigation. Fact 23.

However, Defendants offer evidence suggesting that Mr. Wright was not simply engaging in verbal speech questioning the officers' presence, but rather engaging in verbal conduct that could obstruct the officers' investigation of the pedestrian stop. *See Cordova v. City of Belen*, No. 09CV1055 WJ/WDS, 2011 WL 13289669, at *6 (D.N.M. Feb. 9, 2011) (the Constitution does not provide a blanket "license to interrupt" official business of officers through verbal conduct. *Greene*

---

[4] Facts that are presented here and are not disputed are supported by exhibits attached to the parties' briefs.

*v. Barber*, 310 F.3d 889, 896 (6th Cir. 2002). Officer Martinez testified that Mr. Wright was speaking directly to the crowd, "making loud gestures, egging the crowd on to continue with the whole this is a BS stop, we're always bothering them, which is enticing [sic] the crowd to do the same"). He stated that Mr. Wright's conduct was impeding his ability to continue with the roadway investigation. Doc. 56-2 at 11 (Transcript of Proceedings before Judge Mark Sanchez in *City of Hobbs v. Emma Smith Wright and Shamu Wright, Sr.,* D-506-LR-2018-00066 & 67 (Fifth Jud. Dist., Feb 8, 2019)). Officer Martinez also stated in his Declaration that Mr. Wright was:

> standing up at the front of the group with his hands in his pockets and proclaiming very loudly to one and all that he thought the stop was bullshit and the young men who were there being questioned hadn't done anything and didn't have to talk to the Officers. . .[Mr. Wright] was also shouting out questions to Officers Jaimes and Gastelum about the reason for the stop, challenging their authority and interrupting them as they were attempting to speak to the two subjects who were being detained.

Doc. 56-3, ¶¶22-23.

Plaintiff also states that he complied with Officer Martinez' requests that he remove his hands from his pockets. Fact 50. However, Defendants offer evidence directly disputing that fact. Mr. Wright complied with Officer Martinez' initial request to remove his hands from his pockets, but Officer Martinez stated that Mr. Wright put his hands back in his pockets again and had to be repeatedly asked to remove them or step away. Doc. 56-4 at 1 (Ex. 4, Suppl. Narrative of Pedestrian Stop); Ex. 3 at 22-26, 35-36, 41-42 ("I asked him again to take his hands out of his pockets and step back and explained to him that he was making me nervous when he would draw close with his hands in his pockets."); Doc. 56-2 at 11 (Ex. 2 at 173) (Martinez testimony that when he asked Mr. Wright to take a step back, he refused and that he was non-compliant during "[t]he entire incident").

The evidence presented by Defendants also indicates that the officers became increasingly concerned about crowd control and officer safety. Officer Martinez testified that he told Mr. Wright that he was "interjecting in our traffic stop. . . I told him that he was making me feel unsafe . . . ."). Doc. 49-5 at 3 (Ex. 5 at 25). He also described Mr. Wright's conduct as more than just contentious, and that it included profanities and comments to "amp" the crowd up. *See* Resp. to Fact 22; Doc. 56-2 at 158:17-24; 171:8 -173:5 (testifying that Mr. Wright proclaimed: "Eff the Police. This is BS…They're always messing with us."). Officer Martinez explained why he believed Mr. Wright's conduct was "obstructing" the investigation:

> Q. . . . And what exactly did [Mr. Wright] do that you say was obstructing?
>
> A. Again, keeping my focus away from the officers that were trying to get the task at hand. He's inciting the crowd, putting his hands in his pockets. I'm telling him to leave the scene if he doesn't like the outcome of this. He refused to do that. After that I told him that he needed to identify himself. Then he started concealing. He said he didn't have to tell me anything.

Doc. 56-2 at 10 (page 171:10-19).

Plaintiff states that Officers Martinez, Gastelum and Jaimes arrested him for concealing his identity. Fact 43. Defendants admit that all three officers participated in Mr. Wright's arrest for Concealing ID by helping Officer Martinez physically effect that arrest, but dispute that Officers Gastelum and Jaimes also participated in Mr. Wright's initial seizure (the order that he identify himself). Resp. to Fact 43.[5]

As mentioned above, Tenth Circuit precedent requires there must be reasonable suspicion of some predicate, underlying crime before arresting an individual for concealing his or her

---

[5] This issue has relevance to liability of the individual officers on the initial encounter if it was a detention, since officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and to develop probable cause for arrest. *U.S. v. Chavez,* 534 F.3d 11338, 1346 (10th Cir. 2008); *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985) (The collective information of police officers and law enforcement officers involved in an arrest can form the basis for probable cause, even though that information is not within the knowledge of the arresting officer).

identity. *Keylon v. City of Abq*, 535 F.3d 1210, 1217 (10th Cir. 2008). Under New Mexico law, concealing one's identity:

> consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state.

NMSA 1978, §30-22-3. If Officer Martinez had reasonable suspicion that Mr. Wright was not merely criticizing the stop/detention of Mr. Penman as a bystander but was actively trying to interfere with the stop, then Officer Martinez would have legal grounds to request that Mr. Wright identify himself. Further, even if the officers' pedestrian stop of Mr. Penman was initially consensual, an obstruction of that investigation would be in itself reason to detain Mr. Wright. See NMSA 1978, §30-22-1(D) ("Resisting, evading or obstructing an officer consists of . . . **resisting or abusing any . . .peace officer in the lawful discharge of his duties**.") (emphasis added).

Defendants have presented evidence creating disputes of material fact concerning whether Mr. Wright's conduct incited the crowd and created a situation where there was a concern for public and officer safety. Based on this evidence, Mr. Wright was not asked for his identification until the situation had intensified and the officers made him aware that his conduct was interfering with their investigation. Defendants also offer evidence from which a juror could find that Plaintiff did not comply with Officer Martinez' orders to keep his hands in view and/or to step back from the perimeter of the pedestrian stop. Viewing this evidence under a totality of circumstances and favorably to Defendants as the non-movants, a reasonable fact finder could conclude that Officer Martinez had reasonable suspicion that Mr. Wright was engaging in criminal activity, namely attempting to obstruct an investigation and resisting arrest, and this evidence precludes summary judgment for Plaintiff Wright.

B. <u>Pedestrian on Roadway Statute</u>

In addition to Obstructing or Evading an Officer, Mr. Wright was also arrested under a Pedestrians in the Roadway statute, NMSA 1978, §66-7-339, making it a misdemeanor "for any pedestrian to walk along and upon an adjacent roadway."

In the discussion above, the Court has already concluded that Defendants have offered evidence which would infer to a fact finder that Officer Martinez had reasonable suspicion to justify Mr. Wright's detention. Therefore, it is unnecessary to address whether Officer Martinez also had reasonable suspicion of criminal activity based on the Pedestrians in the Roadway statute.

## CONCLUSION

In sum, the Court finds and concludes that a reasonable fact finder could conclude that Officer Martinez had reasonable suspicion that Mr. Wright was engaging in criminal activity, namely attempting to obstruct an investigation and resisting arrest, and this evidence precludes summary judgment for Plaintiff Wright.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff Shamus Wright, Sr.'s Motion for Summary Judgment **(Doc. 49)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE