**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SHAMUS WRIGHT, SR., and
KENTOINE PENMAN,

        Plaintiffs,

        vs.                                No.  CIV-18-01126 WJ/KRS

OFFICER KEVIN MARTINEZ,
a Hobbs Police Department officer;
OFFICER RUBEN GASTELUM,
a Hobbs Police Department officer; and
OFFICER JUAN JAIMES,
a Hobbs Police Department Officer,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLANTIFF PENMAN'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Plaintiff Kentoine Penman's Motion for

Summary Judgment, filed May 9, 2019 **(Doc. 32)**.   Having reviewed the parties' pleadings and

the applicable law, the Court finds that Plaintiff's motion is not well-taken and, therefore, is

denied.

## BACKGROUND

Both Plaintiffs in this case claim that they were deprived of their Fourth Amendment

rights to be free of unreasonable seizures following their arrests by Defendants who are Hobbs

Police Department officers.  Plaintiff Wright contends that Officer Kevin Martinez was acting

outside his lawful authority when he arrested him for refusing to provide identification and

because he was verbally objecting to police activity. Plaintiff Penman claims that Officer Jaimes

violated his constitutional rights by unlawfully detaining him.  Both Plaintiffs have filed motions

for summary judgment. The Court recently denied Plaintiff Wright, Sr.'s motion, *see* Doc. 66 (Mem. Opin. And Order), and now addresses Mr. Penman's motion for summary judgment.

## I.      Parties' Positions

### A.      Plaintiffs:

The Complaint alleges that Mr. Penman was detained and that a "records check" was done. The Joint Status Report (Doc. 22) includes more factual details which the Court sets out here as an overview of the parties' positions, which are interrelated.

On the evening of June 28, 2018, both Plaintiffs were standing in a roadway preparing for the Wright family reunion at that location. Hobbs Police Department ("HPD") Officer Juan Jaimes was conducting a nearby traffic stop and noticed Mr. Penman and De' Aunte Meridyth standing in the roadway near a parked car on a residential street. Officer Jaimes decided to detain the two under the New Mexico state statute that makes it unlawful for a pedestrian "to walk along or upon an adjacent roadway" where sidewalks are provided.  NMSA 1978, §66-7-339 ("Pedestrian on Roadway" statute).  Officer Jaimes approached Mr. Penman and Mr. Meridyth in his patrol car with his emergency lights engaged.  They began to walk away, Officer Jaimes called them back and Mr. Penman complied. Officer Jaimes asked Mr. Penman to produce identification, which he did.

While Officer Jaimes was conducting a records check on Mr. Penman, Officers Gastelum and Martinez arrived on the scene and tried to get identification from Mr. Meridyth.  Mr. Meridyth walked behind Plaintiff Wright who was standing on a sidewalk.  Mr. Wright repeatedly asked the officers why they were there.  The officers told Mr. Wright that he was "interjecting himself" into their investigation and asked him to produce identification.  Mr. Wright refused and explained that he had done nothing wrong.  Officers Martinez and Gastelum informed Mr. Wright that he was

being placed under arrest for Concealing Identity. Officer Gastelum conducted a leg sweep of Mr. Wright, causing him to go to the ground. Officer Martinez used his body weight to keep Mr. Wright pinned to the ground and Officer Gastelum handcuffed him. Mr. Wright was taken to the patrol unit, transported to Hobbs City Jail and charged with Concealing Identity and Resisting, Evading and Obstructing an officer.

B.    Defendants:

Defendants' version is more detailed. Defendants claim that while Officer Jaimes was conducting a records check of Mr. Penman, Mr. Wright approached Officer Martinez and became increasingly vocal about the officers' presence. He had his hands in his pockets at the time and when Officer asked him to remove his hands from his pockets and leave the scene, Mr. Wright refused and began inciting the crowd against the officers. When Mr. Wright refused to leave the scene, refused to provide identifying information and then resisted arrest, Officer Gastelum performed a leg sweep. Mr. Wright continued to struggle and Officer Jaimes came over to assist the other two officers in arresting Mr. Wright after obtaining Mr. Penman's information. Officer Jaimes pulled out his Taser and told Mr. Wright to place his hand behind his back. As the officers were attempting to arrest Mr. Wright, the crowd on the sidewalk began to move closer to the officers. More vehicles arrived and the crowd grew to about forty people. Doc. 22 at 7-8.

Defendants claim that Mr. Wright continued to yell and escalate the situation. The crowd yelled at Officers Gastelum and Martinez as they attempted to place handcuffs on Wright. Mr. Penman also approached the officers, standing inches away from Officer Martinez' face and trying to record the incident. When Officer Jaimes instructed him to back away repeatedly, Mr. Penman refused. Officer Martinez then informed Mr. Penman that he was under arrest for repeatedly refusing to step back. Mr. Penman shoved Officer Martinez and ran off. Officer Martinez pursued

Mr. Penman, lunged toward him, picked him up from the ground and forced him onto the ground. Officer Jaimes approached Officer Martinez and told Mr. Penman to place his hands behind his back, but Penman refused. By this time, the crowd had closed in again and was about three feet away from the officers. Officer Jaimes placed his knee on Penman's upper back and pointed the Taser at the crowd of people. The crowd retreated. Officer Jaimes told Mr. Penman to place his hands behind his back or he would be tased, and Penman complied. Mr. Penman was arrested and escorted to Hobbs City Jail.

After arresting Mr. Penman, Officer Jaimes found a small plastic bag that contained a white powdery substance near the ground where Mr. Penman was detained. Officer Jaimes also searched the back seat area of his patrol unit where Mr. Penman had been sitting. He found two small plastic bags, one containing a green leafy substance and the other a white crystalline substance. Mr. Penman told Officer Jaimes he had just finished smoking weed, that the bag containing the green leafy substance was his and that the bag with the white powdery substance was cocaine and also belonged to him. However, Mr. Penman told Officer Jaimes that the small bag containing a white crystalline substance was not his. Tests conducted with a narcotics reagent kit at the HPD revealed that the white powdery substance was cocaine, the white crystalline substance was methamphetamine and that the green leafy substance was marijuana.

On June 28, 2018, Mr. Penman was arrested for the following crimes: 1) Pedestrians in the Roadway, Resisting; 2) Obstructing, or Evading an Officer; 3) Possession of Cocaine, Methamphetamine, and Marijuana; and 4) Assault and Battery on a Peace Officer. Mr. Wright was arrested for the following crimes: 1) Concealing Identity; and 2) Resisting, Evading, or Obstructing an Officer.

Count I of the Complaint alleges Wrongful Arrest and detention of Mr. Wright, and Count II alleges Unlawful Detention and seizure of Mr. Penman, both in violation of their Fourth Amendment rights.

## II.    Legal Standard

Both Plaintiffs have filed summary judgment motions, with the individual officers relying on a defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012).[1] "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 134 S.Ct. 1861, 1865(2014). The first prong asks whether the facts, taken in the light most favorable to the party asserting the injury—here the Defendant officers—show that the officer's conduct violated a federal right. The second asks whether the right in question was "clearly established" at the time of the violation. *Id*. at 1865–66 (citations and quotation marks omitted). The Court may consider these two inquiries in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Once a defendant asserts a defense of qualified immunity, the burden shifts to the plaintiff to show that the law and facts at issue establish that qualified immunity does not apply. *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1026 (10th Cir. 1994). The plaintiff must come forward with sufficient evidence to show that the defendant violated a constitutional or statutory right, and that the right was clearly established at the time of the conduct. *See McBeth v. Himes,* 598 F.3d 708, 716 (10th Cir. 2010). The contours of the right must be sufficiently clear that a reasonable official

---

[1] Defendants' response to Mr. Penman's motion for summary judgment does not expressly rely on a qualified immunity defense, although certain language in the brief indicates that they argue the law is not clearly established. *See* Doc. 40 at 24.

would understand what he is doing violates that right." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

In this case, the relevant facts are not in dispute, but rather the legal significance of the facts. *See Rummel v. Lexington Ins. Co.*, 123 N.M. 752, 758 (1997) (summary judgment is appropriate where no facts are in dispute, but only the legal significance of the facts).

## III.    Relevant Law Under Fourth Amendment

In determining whether a seizure comports with the strictures of the Fourth Amendment, the Tenth Circuit has identified three categories of police citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment, (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity, and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause. *Latta v. Keryte* 118 F.3d 693, 698 (10th Cir. 1997).

*Consensual Encounter:* A consensual encounter is a voluntary exchange between the officer and the citizen in which the officer may ask non coercive questions. *United States v. West*, 219 F.3d 1171, 1176 (10th Cir.2000). An encounter is consensual when a reasonable person would believe he was free to leave or disregard the officer's request for information. *Id.*

*Detention:* An officer detaining a suspect for the purpose of requiring him to identify himself, has conducted a seizure subject to the requirements of the Fourth Amendment. *Brown v. Texas*, 443 U.S. 47, 50–52 (1979) ("since officers lacked any reasonable suspicion to believe that defendant was engaged or had engaged in criminal conduct, application of the Texas statute to detain defendant and require him to identify himself violated the Fourth Amendment"); *State v. Ortiz*, 2017-NMCA-006, ¶ 12, 387 P.3d 323, 327; *see also State v. Dawson*, 1999–NMCA–072, ¶

21, 127 N.M. 472, 983 P.2d 421 (concluding that unless there is reasonable suspicion to believe the defendant was involved in criminal activity, it violates the Fourth Amendment to require the defendant to produce identification). For reasonable suspicion to exist, an officer "need not rule out the possibility of innocent conduct;" he or she simply must possess "some minimal level of objective justification" for making the stop. *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009). Evidence falling "considerably short" of a preponderance satisfies this standard. *U.S. v. Arvizu,* 534 U.S. 266, 274 (2002).

In evaluating whether an officer had reasonable suspicion, a court is guided by the "totality of the circumstances" in the case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. *U.S. v. Arvizu,* 534 U.S. 266, 273 (2002); *U.S. v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997) (the existence of objectively reasonable suspicion of illegal activity does not depend upon any one factor, but on the totality of the circumstances). Under this standard, officers are allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. *Id.*

**DISCUSSION**

Courts may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236 (2009); *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015). In this case, the Court concludes that Plaintiff has not shown as a matter of law that Defendants violated his Fourth Amendment rights, and so it is unnecessary to decide here whether the relevant law was clearly established at the time.

Mr. Penman's Fourth Amendment claim revolves solely around his unlawful detention.[2] He contends that the encounter was not consensual and that Officer Jaimes had no reasonable suspicion to stop him and ask him for identifying information. Mr. Penman does not challenge his arrest for obstruction, drug possession or assault and battery on a peace officer.

The pedestrian stop of Mr. Penman was initiated by Officer Jaimes, who observed two males (Mr. Penman and Mr. Meridyth) standing in the middle of the road at around 9:00 p.m. on June 28, 2018. Officer Jaimes believed that these individuals had violated the New Mexico Pedestrians on Roadway statute, NMSA ¶66-7-339. He admits that he never observed either man walk along the roadway before he decided to stop and contact them, but maintains that he had a basis to infer that the two men had to have walked along the roadway to get to where he was seen standing—which was the middle of the road. Officer Jaimes noticed that both individuals were walking away from him toward the sidewalk. He engaged his emergency lights before he exited his patrol vehicle. As the men continued to walk away from him, he called them back. He asked Mr. Penman for identifying information and started to conduct a records check. Officer Jaimes then went over to assist the other two officers who were engaged in arresting Mr. Wright and maintaining crowd control. Mr. Penman was later arrested when he refused to step back from the officers and for assaulting Officer Martinez.

Defendants dispute the involvement of Officers Gastelum and Martinez in the initial encounter with Mr. Penman. Add'l Facts 6, 7, 9, 11, 12. Plaintiff contends that the other two officers took part in his detention while Defendants contend that they arrived on the scene to provide backup with the investigation and crowd control. Defendants contend that the encounter with Mr. Penman was not necessarily a detention and could be considered a consensual encounter.

---

[2] Facts that are presented here and are not disputed are supported by exhibits attached to the parties' briefs.

Alternatively, if the encounter was a detention, Officer Jaimes had reasonable suspicion to stop Mr. Penman under the pedestrian-on-roadway statute.

## I.      Whether Encounter Was Consensual

Plaintiff relies on Officer Jaimes' own testimony that he believed Mr. Penman was "detained" when he turned on his emergency lights indicating to Mr. Penman that he intended for him to stop and when he asked Mr. Penman to stop walking away and come back. Doc. 32-3 at 7-8.

> Q.      . . . So . . . Mr. Penman is clearly detained, right, by you?
> A.      When I conducted the pedestrian on the roadway? Yes.
> Q.      Yes. Okay. Because you put your emergency equipment on, right?
> A.      Uh-huh.
> Q.      Is that correct?
> A.      Yes.
> Q.      And . . . that's an intention to say, hey, don't move, right? I got official business here essentially, right?
> A.      Basically.
> Q.      Okay. And then --- and he walked on to the sidewalk, right?
> A.      Yes.
> Q.      Mr. Penman? And you said to him, hey, come back here, right?
> A.      Yes.
> Q.      And that's a detention, right?
> A.      Yes.

Defendants minimize Officer Jaimes' admissions, noting that subjective beliefs and motivations do not enter into the analysis of whether his "initial encounter" with Mr. Penman was a detention at this point or consensual and the proper inquiry is an objective one—specifically, what a typical reasonable person would have understood by the exchange between the officer and the individual, and whether the individual would have understood that his liberty was restrained. *See U.S. v. Sanchez*, 89 F.3d 715, 717–18 (10th Cir. 1996). Also, Defendants acknowledge that Officer Jaimes admitted he detained Mr. Penman but they deny categorically that Mr. Penman was detained in the legal sense of the word, as discussed above. The Court agrees with Defendants that Officer Jaimes' admissions are not binding, and indeed are improper, as legal conclusions.

*See Elliot v. Turner Const. Co.*, 381 F.3d 995 (10th Cir. 2004) (whether a legal conclusion based upon undisputed facts is correct is a matter of law).

Plaintiff insists that subjective intent of officers can be relevant if that "intent has been conveyed to the person confronted," relying on *Michigan v. Chesternut,* 486 U.S. 567, 578 (1988). However, in *Chestnut,* the United States Supreme Court made it clear that "what constitutes a restraint on liberty prompting a person to conclude he is not free to leave "will vary, not only with the particular police conduct at issue, *but also with the setting in which the conduct occurs*." (emphasis in original), cited in *United States v. Hernandez*, 847 F.3d 1257, 1265 (10th Cir. 2017). In other words, the analysis is based on a totality of circumstances, not simply the few facts advanced by Mr. Penman. The question here is whether the facts indicate that Mr. Penman would have understood that he was submitting to a show of authority and that compliance might be compelled. *See, e.g., U.S. v. Anderson*, 114 F.3d 1059, 1064 (10th Cir. 1997). Such facts might include the presence of more than one officer, the display of a weapon and physical touching by the officer, or his use of a commanding tone of voice. *Id.*

Officer Jaimes does not dispute that as he approached Mr. Penman with his patrol vehicle, Mr. Penman and Mr. Meridyth moved towards the sidewalk; that Officer Jaimes engaged the emergency equipment on the unit; that he called them back and Mr. Penman returned and furnished his identification; and that Officer Jaimes conducted a records check for outstanding warrants. However, Defendants offer additional facts which, when viewed favorably to Defendants as the non-movant, could suggest to a reasonable fact finder that the encounter between Officer Jaimes and Mr. Penman was consensual rather than a detention that must be premised on reasonable suspicion.[3]

---

[3] Offering additional facts does not in itself create a dispute of material fact. *See Blossom v. Yarbrough*, 429 F.3d 963 (10th Cir. 2005) (district court erred in equating non-movant's refusal to admit with the affirmative submission

There are no allegations that Officer Jaimes used a threatening tone of voice, displayed his weapon or physically touched Mr. Penman to assert authority for the initial stop. Mr. Penman simply alleges Officer Jaimes activated the emergency lights on his vehicle as he exited his patrol unit and beckoned him and Mr. Meridyth who were walking away from him, to come back and speak to him. It is undisputed that Officer Jaimes did not brandish a weapon during this encounter until the very end of the encounter, when he pulled out his taser to get Mr. Wright to comply with the other officers' attempts to handcuff him. There is no show of evidence that Officer Jaimes engaged in a physical show of force apart from arriving in a patrol car with his emergency lights operating. The mere activating of a patrol unit's lights do not constitute a show of authority that would tend to be coercive.

Also significant in the totality inquiry is the fact that Mr. Meridyth, the other individual who accompanied Mr. Penman, ignored Officer Jaimes' initial request that he come back from the sidewalk so the Officer could talk to him. Mr. Meridyth also brushed off Officer Gastelum's attempts to get him to identify himself, and according to the undisputed facts, Officer Gastelum did not pursue him or ask him any further questions. Mr. Meridyth's conduct, which was most likely observed by Mr. Penman who was standing nearby, can serve as an index of the level of coerciveness that was being shown by the officers during the initial encounter. Given Mr. Meridyth's response to Officer Jaimes' requests to return and show identification, a reasonable juror could find that Officer Jaimes displaced no coerciveness at all which indicate that Mr. Penman was being detained. Officer Jaimes did not explicitly advise Mr. Penman that he was free to terminate the encounter, but this is merely another factor "to be considered in the totality of the

---

of conflicting evidence). However, Mr. Penman's bare-bone statement of facts does not contain all the facts a fact finder must consider in a "totality" inquiry in order to determine whether Officer Jaimes' encounter was consensual or a detention under the Fourth Amendment. The additional facts offered by Defendants are not only relevant to that question, but would be exactly the kind of evidence a jury would be expected to consider.

circumstances." *United States v. West*, 219 F.3d at 1176; *U.S. v Spence*, 397 F.3d 1280, 1284 (10th Cir. 2005) (providing a citizen with an explicit advisement that he is free to terminate an encounter with an officer "is not a requirement; it is merely a factor to be considered in the totality of the circumstances.").

Plaintiff contends that there is Tenth Circuit precedent showing that the initial encounter was in fact a detention that was tantamount to a seizure, but the Court finds that these cases are factually dissimilar. *United States v. Hernandez* involved a pedestrian stop. 847 F.3d 1257 (10th Cir. 2017). The Tenth Circuit Court of Appeals held that the officer's request to stop walking "was a show of authority such that a reasonable person in [his] position would not have felt free to decline the Officers' requests to terminate the encounter." *Id.* However, the holding turned on the specific facts of that case. The defendant kept walking, trying to avoid a conversation with the officers while the officers kept following him closely in the dark with no one else around. The defendant did not stop walking until one officer asked him to stop even though he was answering the officers' questions,

In another case cited by Plaintiff, *U.S. v. Morgan,* the Tenth Circuit held that the person was momentarily "seized" before flight when a uniformed officer with flashing emergency lights told him to "hold up." 936 F.2d 1561, 1567 (10th Cir. 1991). However, what the court found significant was that the officer had followed the car in which Defendant was a passenger for several blocks with his red lights flashing before the officer exited from the patrol unit and asked the defendant to stop. Thus, the cases Plaintiff offers are distinguishable from this case because each has a different *totality* of circumstances, and therefore none of the cases relied on by Plaintiff is dispositive of whether the initial encounter was consensual or a detention.

The Court therefore finds that the relevant facts in this case could infer that the initial encounter was consensual so that Officer Jaimes did not need reasonable suspicion to approach Mr. Penman. Accordingly, Plaintiff is not entitled to summary judgment because he has not shown as a matter of law that Defendants violated his constitutional rights during his initial encounter with Officer Jaimes.

## II.      Whether Law Was Clearly Established

Plaintiff contends that the law was clearly established at the time that the pedestrian-on roadway statute did not apply to him because standing on a residential street is not a crime under the statute.

Having already determined that a reasonable fact finder could conclude that the initial encounter was consensual and that Mr. Penman is not entitled to summary judgment, there is no need to proceed to further analysis which would require that the Court assume the encounter was a detention and determine whether the law was clearly established at the relevant time.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff Penman's Motion for Summary Judgment **(Doc. 32)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE